## S05G0251. DELTA AIRLINES, INC. v. TOWNSEND.

(614 SE2d 745)

CARLEY, Justice.

Jack Townsend was injured when his vehicle was struck head-on by a car operated by William Serio. At the time of the collision, Serio was driving home from the Atlanta airport, where he had arrived on a Delta Airlines (Delta) flight from Milwaukee. Alleging that Serio became intoxicated by the consumption of wine served to him while on that flight, Townsend filed a tort action against him and Delta in the Superior Court of Fulton County. The claim against Delta was based upon the Georgia Dram Shop Act (GDSA), OCGA § 51-1-40, and common law negligence.

Asserting federal preemption, Delta removed the case to federal court. The district court concluded that there was no federal claim and no federal preemption of any state cause of action, and remanded the case to the superior court. After remand, Delta moved to dismiss for failure to state a claim. The trial court granted Delta's motion, holding that the air carrier was not subject to state tort liability for supplying alcohol to a passenger on an interstate flight. On appeal, the Court of Appeals upheld the dismissal of Townsend's common law negligence claim, but reversed as to the claim based upon the GDSA. The Court of Appeals held that, "[s]urely, the Georgia legislature intended our dram shop statute to apply in these circumstances. [Cits.]" *Townsend v. Delta Airlines*, 269 Ga. App. 645, 648 (1) (605 SE2d 54) (2004). Delta applied for certiorari, which we granted to review the holding of the Court of Appeals that Townsend stated a viable claim for recovery under the GDSA.

1. "At common law there was no right of recovery for selling or furnishing intoxicating liquor to an intoxicated person. [Cit.]" *Henry Grady Hotel Co. v. Sturgis*, 70 Ga. App. 379, 385-386 (1) (28 SE2d 329) (1943). " ' "The common-law rule holds the man who drank the liquor liable and considers the act of selling it as too remote to be a proximate

cause of an injury caused by the negligent act of the purchaser of the drink." ' " *Keaton v. Kroger Co.*, 143 Ga. App. 23, 26 (327 SE2d 443) (1977).

> Thus, so long as the common-law rule is adhered to, it matters not whether the act of furnishing liquor may be considered as simple negligence or as negligence per se in violation of the criminal statute — it cannot, alone, leap the common law's chasm of causation. [Cits.] This is why the violation of liquor laws cannot be analogized to other types of negligence per se, and why legislation is required which directly imposes liability in derogation of the common law.

*Keaton v. Kroger Co.*, supra at 27.

When the General Assembly enacted the GDSA "in 1988, it abrogated the common law rule . . . , and created a new cause of action." *Riley v. H & H Operations*, 263 Ga. 652, 654 (2) (436 SE2d 659) (1993). Because the statute is in derogation of common law, it is Townsend's "exclusive remedy [for seeking to impose liability on Delta] for damages arising from [Serio's] driving while intoxicated." *Hulsey v. Northside Equities*, 249 Ga. App. 474, 478 (3) (548 SE2d 41) (2001). Not only is the GDSA the sole legal remedy available to Townsend,

> it has always been a rule of construction of statutes that those in derogation of the common law, that is those which give rights not had under the common law, . . . must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. The legislature is presumed to act with knowledge of this rule of construction, and with that body only lies the right and privilege to grant rights not given under the common law and to extend and broaden any rights so granted. Such is not the function of the courts.

*Thompson v. Watson*, 186 Ga. 396, 405-406 (197 SE 774) (1938), overruled on other grounds, *Walden v. Coleman*, 217 Ga. 599, 605 (124 SE2d 265) (1962). Thus, the issue presented for resolution in this appeal is whether, under the GDSA, as strictly construed, Townsend has a cause of action against Delta for the injuries resulting from Serio's act of driving while intoxicated.

OCGA § 51-1-40 (a) provides:

> The General Assembly finds and declares that the consumption of alcoholic beverages, rather than the sale or furnishing or serving of such beverages, is the proximate cause of

any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person, except as otherwise provided in subsection (b) of this Code section.

This provision represents a qualified codification of the common law rule that the act of consuming, rather than that of supplying, alcoholic beverages is the proximate cause of the injuries suffered or inflicted by the consumer thereof. The resulting legal effect is that "[a] provider of alcoholic beverages is insulated from liability to third parties except as provided in subsection (b). [Cit.]" *Kappa Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890, 893 (2) (473 SE2d 213) (1996).
Subsection (b) provides, in relevant part, that one

who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage [to a third party] caused by or resulting from the intoxication of such ... person when the sale, furnishing, or serving is the proximate cause of such injury or damage.

Thus, the GDSA applies only in the limited context of injuries that result from the operation of a vehicle by a driver who is under the influence. However, "nothing in that statute or any other provision of Georgia law mandates that a provider of alcoholic beverages must prevent an intoxicated person from driving." *Armstrong v. State*, 244 Ga. App. 871, 873 (2) (537 SE2d 147) (2000). Instead, the unambiguous terms of the GDSA predicate liability upon whether the supplier of alcohol knew that the consumer posed a risk of driving while inebriated. For liability to attach, the provider must know that the intoxicated person to whom the alcohol is furnished "will soon be driving a motor vehicle." "Soon" means "[i]n the near future; shortly." The American Heritage Dictionary (2d College Edition), p. 1165. Therefore, the clear intent of the General Assembly is to impose civil liability only on that limited class of suppliers of alcohol who had reason to know that the consumer will be driving a vehicle shortly after being served.

[W]here one provides alcohol to a noticeably intoxicated [individual] knowing that he will soon be driving his car, it is foreseeable to the provider that the consumer will drive while intoxicated and a jury would be authorized to find that it is foreseeable to the provider that the intoxicated driver may injure someone.

*Sutter v. Hutchings*, 254 Ga. 194, 198 (1) (327 SE2d 716) (1985). The GDSA

> is analogous to the long established rule imposing liability upon the owner of an automobile who entrusts it to a person who is intoxicated. . . . [There is] no legal difference between supplying an automobile to a noticeably intoxicated [individual], [cit.], and supplying alcohol to a noticeably intoxicated . . . automobile driver.

*Sutter v. Hutchings*, supra at 198 (1).

In the commercial setting, the General Assembly certainly intended that the owners of bars, restaurants and similar businesses would be subject to potential liability under the GDSA. The customers of such purveyors of alcohol necessarily travel to and from the establishment by some land-based means of transportation, so that financial viability often depends on the accessibility of the premises by motor vehicle. A clear proximate connection thus exists between such businesses and motor vehicular traffic.

> "[I]n light of the use of automobiles and the increasing frequency of accidents involving drunk drivers, . . . the consequences of serving liquor to an intoxicated person whom the server knows or could have known is driving a car, is reasonably foreseeable." [Cit.]

*Elsperman v. Plump*, 446 NE2d 1027, 1030 (Ind. Ct. App. 1983). Because the patrons of land-based establishments serving alcohol generally have direct and immediate access to their vehicles, liability should attach to an owner who knew or should have known that a departing intoxicated customer would shortly be driving. See *Griffin Motel Co. v. Strickland*, 223 Ga. App. 812, 814 (2) (479 SE2d 401) (1996).

The proximate connection between the consumption of alcohol by an airline passenger during a flight and his subsequent act of drunk driving is much more remote and attenuated. An air carrier moves passengers collectively between airports, not from one airport to each individual passenger's ultimate destination. The on-board availability of alcoholic beverages is an amenity while flying, and is not the commercial objective of the flight. Any consumption of alcohol takes place prior to arrival at an airport and the passengers' exit from the aircraft. An airline has no control over its passengers' activities once they have deplaned, and many factors, such as customs and baggage claim, can affect the length of time between consuming alcohol on the

plane and actually departing the airport. In fact, those passengers scheduled on connecting flights presumably will remain at the airport, whereas those who do leave have a variety of options other than driving themselves to their ultimate destinations.

Thus, unlike the clientele of land-based establishments, airline passengers generally do not have direct and immediate access to their vehicles after they deplane. Moreover, while an airline knows or should know that an intoxicated passenger will shortly be leaving the plane where the alcohol was served, it has no way of knowing whether any of its passengers will "soon" be operating a vehicle as opposed to remaining at the airport or departing by some other means of transportation. To hold that liability under the GDSA attaches under these circumstances would place

> "an affirmative duty on providers of alcohol to determine the method by which a patron plans to depart the [premises where the liquor was consumed], *and* how that patron plans eventually to get home. That affirmative duty exceeds the duty established by the legislature." [Cit.] (Emphasis in original.)

*Sugarloaf Café v. Willbanks*, 279 Ga. 255, 256-257 (612 SE2d 279) (2005).

The requirement of proximate cause constitutes a limit on legal liability; it is a " 'policy decision . . . that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery.' [Cit.]" *Atlanta Obstetrics & Gynecology Group v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990). Construing OCGA § 51-1-40 (b) strictly, we conclude that, in enacting the GDSA, the General Assembly intended to abrogate the common law principle that the negligent driver is the sole proximate cause of injuries resulting from his inebriated condition only in the limited case of a traditional land-based supplier of the alcohol. Accordingly, the Court of Appeals erred in reversing the trial court's grant of Delta's motion to dismiss for failure to state a claim under GDSA based upon its in-flight service of wine to Serio.

2. The question of federal preemption becomes moot, since, as a matter of Georgia law, Townsend has no state claim to be preempted.

*Judgment reversed. All the Justices concur, except Fletcher, C. J., who dissents.*

FLETCHER, Chief Justice, dissenting.

Because the majority purports to apply a strict construction to the Dram Shop Act, but instead inserts words the legislature never intended, I dissent.

In 1985, this Court held that under the common law of this State, a person who furnished alcohol to a noticeably intoxicated person under the legal drinking age, knowing that the minor would soon be driving a car, is liable in tort to a third person injured by the negligence of the intoxicated minor.[1] Following that decision, the legislature enacted a statute that broadened the common law remedy. Under the common law rule, no liability attached unless the provider of alcohol had *actual knowledge* that the purchaser was underage and would be driving soon, but under the statute *implied knowledge* is sufficient.[2] Additionally, the legislature permitted the imposition of liability for furnishing alcohol to noticeably intoxicated persons of legal drinking age and not just to minors.[3] Because the legislature has broadened the scope of the common law remedy, the majority errs in purporting to use a strict rule of construction, which applies only when the statute is in derogation of the common law.

Instead, we should "apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, [and] to give words their plain and ordinary meaning."[4] Additionally, "legislation intended to promote the public safety should receive a reasonable and practical interpretation to that end."[5] Finally, the majority's strict construction is plainly at odds with the construction given to the *very same* statute in *Riley v. H & H Operations*, in which this Court liberally construed the statute by looking to the policy behind it, and concluded that a narrow construction would render the Act an ineffective sanction against the evils of drunk driving.[6]

The Dram Shop Act, OCGA § 51-1-40 (b) provides, in pertinent part, that a

> person ... who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such . . . person when the sale, furnishing, or serving is the proximate cause of such injury or damage.

---

[1] *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716) (1985).

[2] See *Riley v. H & H Operations*, 263 Ga. 652, 654 (436 SE2d 659) (1993).

[3] OCGA § 51-1-40 (b).

[4] *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003); OCGA § 1-3-1.

[5] (Citations and punctuation omitted.) *Fortner v. Town of Register*, 278 Ga. 625, 627 (604 SE2d 175) (2004).

[6] *Riley*, 263 Ga. at 654.

The plain language of the statute would clearly apply to a person serving alcohol *anywhere.* Nothing in the Act even remotely supports the majority's rule limiting its application to a "traditional land-based supplier."

In order to amend the statute as it deems appropriate, the majority relies on numerous factors that fit the facts of this case, but simply make bad law. While this case involved an international airport in a large city, there are smaller airports in this State that are not connecting hubs and that allow passengers to have immediate and direct access to their vehicles upon deplaning. But now all airplanes are excluded. While the commercial objective of flying is not the consumption of alcohol, it is also true that the consumption of alcohol is not the commercial objective of many restaurants, concerts, charitable balls, and business meetings. But under the majority's opinion, a plaintiff states a cause of action only if the commercial objective of the supplier of alcohol was the provision of alcohol. While it is true that an airline may not know whether a passenger is going to be operating a car soon, the same can be said for most other providers of alcohol in large settings. Whether the provider of alcohol had knowledge that the customer would soon be operating a vehicle, as opposed to calling a taxi, taking public transportation, or riding home with a friend has previously been a question of fact, rather than decisive of whether a motion to dismiss for failure to state a claim should be granted.[7]

Under the majority's interpretation, the only cases under the Act that will survive a motion to dismiss are ones brought against the homeowner who hosts a small dinner party, greets his guests at the door, mixes the martinis himself, and when the party is over, stands at the door, and waves good-bye to his departing guests. It may seem unlikely that the plaintiff in this case could ultimately meet his burden of proof to establish liability, but that is not the standard for deciding a motion to dismiss. As the plain language of the statute does not support the majority's result, I dissent.

DECIDED JUNE 16, 2005 —
RECONSIDERATION DENIED JUNE 30, 2005.

*Nelson, Mullins, Riley & Scarborough, Richard B. North, Jr., Clinton F. Fletcher,* for appellant.

*Winburn, Lewis & Stolz, Gene M. Winburn, Irwin W. Stolz, Jr., Eason, Kennedy & Associates, Richard B. Eason, Jr.,* for appellee.

---

[7] *Sugarloaf Café, Inc. v. Willbanks*, 279 Ga. 255 (612 SE2d 279) (2005) (*summary judgment* appropriate where evidence did not create an issue of fact to show that owner knew intoxicated patron would soon be driving).

*King & Spalding, Benjamin F. Easterlin IV, John P. Brumbaugh, Alan A. Stevens*, amici curiae.

